IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA | No. 1:23-cr-32 |
| v. | Count 1: Wire Fraud (18 U.S.C. § 1343) |
| OSMAN KANU | Criminal Forfeiture |
| Defendant. | |

FILED IN OPEN COURT
FEB 16 2023
CLERK U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

## CRIMINAL INFORMATION

THE UNITED STATES ATTORNEY CHARGES THAT:

### General Allegations

At all times material to this Criminal Information:

1. The defendant, Osman Kanu, was a resident in Woodbridge, Virginia, within the Eastern District of Virginia. The defendant was not a resident or taxpayer in California.

### Unemployment Insurance Process

2. Unemployment Insurance ("UI") is a joint state-federal program that is intended to provide temporary financial assistance to workers who become unemployed through no fault of their own and who meet certain eligibility requirements. Each state administers its own UI program through its state workforce agency ("SWA"), but all states follow the same guidelines established by federal law.

3. Individuals who have lost their jobs can apply to their SWA to receive UI benefits. If such an individual meets certain requirements, including having received a sufficient amount of wages (as reported by their former employer) prior to separation, they become eligible to receive UI benefits.

4. The SWAs receive and process applications for UI benefits via the internet through their respective websites. Such applications must include the claimant's personal identifying information, including their name, date of birth, Social Security number, address, and phone number, among other information.

5. After the SWA processes and authorizes the application, a financial institution, pursuant to a contract with the state government, receives and disburses the authorized benefits, either by direct deposit into the account the claimant designates to receive such funds or into a prepaid debit card mailed to the address included in the claimant's application for benefits.

6. Once their initial application is approved, the claimant can then file to receive benefits on a weekly basis by certifying online that they remain unemployed and eligible for benefits. SWAs receive and process these certifications via the internet through their respective websites. Based on the claimant's certifications, the SWA will continue to authorize payment of available UI benefits as described herein.

7. The SWA responsible for overseeing California's UI program is the Employment Development Department ("EDD").

8. California EDD UI benefits are credited only to prepaid debit cards issued pursuant to a contract between California EDD and Bank of America, N.A. ("BANA"). BANA is a federally insured financial institution, as defined in Title 18, United States Code, Section 20.

9. California EDD —through BANA— mails prepaid debit cards via the United States Postal Service ("USPS") to the physical address provided on the application for benefits. Each such card bears a unique card number alongside the claimant's name. This information, alone and in conjunction, is a means of identifying the claimant, as defined by Title 18, United States Code,

2

Section 1028(d)(7), and an access device, as defined by Title 18, United States Code, Section 1029(e)(1).

10. Only UI benefits can be credited to the prepaid debit cards issued by California EDD. Claimants can use such cards to make point-of-sale and retail purchases. Claimants can also transfer UI funds from those cards to another account and withdraw them in cash at automated teller machines ("ATMs").

### Federal Cares Act

11. Following the emergence of the novel coronavirus ("COVID-19"), the United States Government took steps to slow the spread of the virus and mitigate its impact on the public's health and economic wellbeing.

12. On March 13, 2020, the President of the United States declared the ongoing COVID-19 pandemic to be an emergency under Section 501(b) of the Robert T. Stafford Disaster Relief and Emergency Assistance Act.

13. On March 18, 2020, the President signed into law the Families First Coronavirus Response Act, which provided additional flexibility for state UI agencies and additional administrative funding to respond to the COVID-19 pandemic.

14. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was signed into law on March 27, 2020. It expanded states' ability to provide UI benefits for many workers impacted by the COVID-19 pandemic, including workers who are not ordinarily eligible for regular UI benefits.

15. Specifically, the CARES Act created the Pandemic Unemployment Assistance ("PUA") program. Under PUA, states are permitted to provide UI benefits during the COVID-19 pandemic to individuals who do not qualify for regular UI benefits, including business owners,

self-employed workers, independent contractors, those seeking part-time employment, and those with a limited work history who are out of business or have significantly reduced their services as a direct result of the pandemic.

16. To qualify for PUA benefits, an individual must not be eligible for regular UI benefits and be unemployed, partially unemployed, or unable or unavailable to work because of certain specified health or economic consequences of the COVID-19 pandemic.

17. The CARES Act also established the Pandemic Emergency Unemployment Compensation ("PEUC") program. PEUC covers most individuals who have exhausted all rights to regular UI compensation under state or federal law and who are able to work, available for work, and actively seeking work as defined by state law. PEUC also gave states the flexibility to determine whether an individual was actively seeking work or if the individual was unable to search for work because of COVID-19, including because of illness, quarantine, or movement restrictions.

18. Finally, the CARES Act also established the Federal Pandemic Unemployment Compensation ("FPUC") program. FPUC allowed states to give an additional $600 per week to individuals collecting regular UI compensation, PEUC, PUA, and other approved state programs. FPUC benefits expired on July 31, 2020.

19. On April 18, 2020, the President further declared that a major disaster existed in all States and territories because of COVID-19, pursuant to section 401 of the Stafford Act, Title 42, United States Code, Section 5170.

20. On August 8, 2020, to further offset the pandemic's impact on American workers, the President authorized the Federal Emergency Management Agency ("FEMA") to expend up to $44 billion from the Disaster Relief Funds for lost wage payments, in accordance with section


408(e)(2) of the Stafford Act, Title 42, United States Code, Section 5174(e)(2). The President authorized the FEMA Administrator to provide grants to participating states, territories, and the District of Columbia to administer delivery of lost wages assistance ("LWA") to those receiving UI benefits. For example, in California, the LWA provided an additional $300 per week for a period of six weeks, to claimants who were eligible for at least $100 week in UI compensation. LWA remained available until the authorized funds were expended in or around December 2020.

## COUNT ONE

*(Wire Fraud)*

THE UNITED STATES ATTORNEY CHARGES THAT:

21. The preceding paragraphs are re-alleged and incorporated by reference.

22. From in or around August 2020, and continuing through on or about September 28, 2020, in Prince William County, Virginia, in the Eastern District of Virginia and elsewhere, OSMAN KANU, the defendant herein, knowingly devised and intended to devise a scheme and artifice to defraud and for obtaining money by means of materially false and fraudulent pretenses, representations, and promises, which scheme and artifice, and the execution thereof, operated in substance as follows:

### The Scheme and Artifice

23. The object of the defendant's scheme and artifice was to enrich himself and others by obtaining unemployment insurance benefits from the state of California EDD under false and misleading pretenses.

24. It was part of the scheme and artifice for the defendant to unlawfully procure, acquire and/or purchase the personal identifying information of U.S. citizens from various sources, including from the darkweb.

25. It was part of the scheme and artifice for the defendant to use internet-connected devices to complete, submit, and certify false and misleading unemployment insurance applications, in the names of various individuals whose personal identifying information he had obtained, to California EDD. In total, the defendant submitted at least 15 such applications.

26. On each of these applications, the defendant made knowingly false statements and false certifications to mislead California EDD including, but not limited to, the following misrepresentations:

    a. Falsely submitting applications with the names and personal identifying information of real individuals, without their permission or consent;

    b. Falsely certifying that he was the individuals in whose names the applications were submitted;

    c. Falsely certifying the individuals' employment history and unemployment status;

    d. Falsely certifying that the individuals, in whose names the applications were submitted, would receive the UI benefits; and

    e. Falsely certifying the individuals' home address.

At least 15 of the unemployment insurance applications submitted by the defendant were approved and funded, resulting in California EDD disbursing at least $308,400 through BANA prepaid debit cards.

27. It was further part of the scheme and artifice for the defendant to travel to California to collect the BANA prepaid debit cards, which were shipped to addresses in California.

28. It was further part of the scheme and artifice for the defendant to use internet-connected devices to falsely certify that the individuals, whose names were on the UI applications and BANA prepaid debit cards, remained unemployed and eligible for benefits.

29. It was further part of the scheme and artifice for the defendant to withdraw the fraudulently obtained proceeds, in cash, from various ATMs located in the Eastern District of Virginia and California.

### Execution of Scheme and Artifice to Defraud

30. For the purpose of executing the aforesaid scheme and artifice to defraud, the defendant routinely used internet-connected devices to cause wire transmissions in interstate commerce, including wire transmissions of unemployment insurance applications made by the defendant while located within the Eastern District of Virginia to California EDD located in California.

31. For example, on or about August 27, 2020, for the purpose of executing and attempting to execute the scheme and artifice described above, the defendant caused to be transmitted by means of wire communication in interstate commerce the signs, signals, and writings described herein: a false and fraudulent unemployment insurance application in another individual's name, J.B., and using their personal identifying information, from within the Eastern District of Virginia to California EDD located in California.

(All in violation of Title 18, United States Code, Section 1343)

## FORFEITURE ALLEGATIONS

32. Pursuant to Rule 32.2(a) Fed. R. Crim. P., defendant, Osman Kanu, is hereby notified that upon conviction of the offense alleged in Court One of this Criminal Information, he shall forfeit to the United States: (1) any property, real or personal, which constitutes or is derived from proceeds traceable to the violation; and (2) any firearm or ammunition involved in or used in the violation.

The property subject to forfeiture includes, but is not limited to the following items seized by the Arlington County Police Department incident to the defendant's arrest on September 28, 2020:

    a. $15,000 in cash, which was subject to a forfeiture warrant (1:22-sw-34);

    b. $292 in cash;

    c. 15 Visa prepaid debit cards and any value remaining in the associated accounts, estimated to be at least $116,300;

    d. One black Apple iPhone 11 Pro Max SN G6TZHUF5N70H, IMEI 353890103099112; and

    e. One Glock firearm (SN-BPTT807).

If property subject to forfeiture cannot be located, the United States will seek an order forfeiting substitute assets, pursuant to 21 U.S.C. § 853(p).

(All in accordance with Title 18, United States Code, Sections 924(d)(1) and 981(a)(1)(C); Title 28, United States Code, Section 2461(c); and Fed. R. Crim. P. 32.2)

Jessica D. Aber
United States Attorney

By: *[signature]*
Carina A. Cuellar
Assistant United States Attorney